UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

NATHANIEL JONES,                          :

                Plaintiff,      :

    - against -                          :

CITY SCHOOL DISTRICT OF NEW             :
ROCHELLE; ASSISTANT SUPERINTENDENT
MARGARET PECUNIA; PERSONNEL CLERK       :
DIANNA WESSEL; and GOODTEMPS aka
GOODWILL INDUSTRIES OF GREATER NEW      :
YORK & NORTHERN NEW JERSEY, INC.,
                                        :

                Defendants.      :
                                        :

- - - - - - - - - - - - - - - - - -x

**OPINION**

08 Civ. 01148 (DC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/10

**APPEARANCES:**

NATHANIEL JONES, ESQ.
Pro Se Plaintiff
51 Webbs Lane, #P04
Dover, Delaware  19904

MIRANDA SAMBURSKY SLONE
SKLARIN VERVENIOTIS LLP
   Attorneys for School District
   Defendants
      By: Adam I. Kleinberg, Esq.
         Matthew J. Mehnert, Esq.
The Esposito Building
240 Mineola Boulevard
Mineola, New York  11501

KAUFF MCGUIRE & MARGOLIS LLP
   Attorneys for Goodwill Industries of
   Greater New York and Northern New
   Jersey, Inc.
      By:  Lisa E. Dayan, Esq.
950 Third Avenue, 14th Floor
New York, New York  10022

**CHIN, District Judge**

    Pro se plaintiff Nathaniel Jones brings this employment case against defendants City School District of New Rochelle, Assistant Superintendent Margaret Pecunia, and Personnel Clerk Dianna Wessel (collectively, the "School District"), and

defendant Goodwill Industries of Greater New York and Northern New Jersey ("GoodTemps"). Jones contends that the School District and GoodTemps violated his rights by discriminating against him because of his race and denying him due process and equal protection of law. Specifically, he asserts that the School District did not offer him employment as a substitute teacher because he is African American. Jones further asserts that the School District conspired with employees of GoodTemps, who refused to include information about his job performance in its letter of reference.

All defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56. The School District proffers that it did not hire Jones because he did not meet the prescribed application requirements. GoodTemps posits that it did not submit a substantive letter of recommendation on Jones's behalf because of its neutral reference policy, which took effect six months prior to Jones's request. As set forth below, no reasonable jury could find that the School District or GoodTemps discriminated against Jones because of his race or that they otherwise violated his rights. Accordingly, defendants' motions are granted and the complaint is dismissed, with prejudice.

BACKGROUND

A.  **Facts**

   1.  **Jones's Relationship with GoodTemps**

        In April 2006, Jones, an African-American male, signed
an employment agreement with GoodTemps, an agency that places
individuals in temporary employment.  (Pl. Dep. 45-46).
Subsequently, GoodTemps secured positions for Jones at TGI Office
Automation for one week during May 2006 and at RC General
Cleaners for a brief period in June 2006.  (Id. at 51-60).  Jones
continued to inquire with GoodTemps about available work
assignments in marketing and other related fields, but GoodTemps
did not place him in any other jobs.  (Id. at 76-77).

        GoodTemps's employee reference policy is set forth in
the Goodwill Employee Handbook, effective May 2006.  It provides,
in relevant part:  "[W]e will respond only to written requests
for information by providing an Employee's dates of employment,
job titles, and compensation."  (Pl. Aff. Exh. H).

   2.  **Jones's Application with the School District and**
        **Communication with GoodTemps**

        In September 2006, Jones applied to be a substitute
teacher with the School District.  (Pl. Dep. 106).  The
application process required Jones to ask two professional
references to submit a "Confidential Report on Applicant."  (Pl.
Aff. Exs. L, M).  To that end, Jones spoke to Michelle Gonzalez,
his supervisor at GoodTemps, who agreed to complete the reference

-3-

form.  (Pl. Dep. 107).  Gonzalez relayed her conversation to
Human Resources representative Christina Cruz, who informed
Gonzalez of GoodTemps's neutral reference policy.  (Cruz Aff. ¶¶
5, 6).  Gonzalez then contacted Jones and informed him that
GoodTemps had a policy against providing substantive references
for their temporary employees.  (Pl. Dep. 109).  Gonzalez offered
to send a "Verification of Employment" letter to the School
District with Jones's dates of employment.  (Id.).

     In response to two subsequent requests from Jones -- in
October 2006 and January 2007 -- Quinette Ventura and Christina
Cruz, both representatives of GoodTemps's Human Resources
Department, filled out the School District's reference form with
objective information, as permitted under GoodTemps's policy,
i.e., to confirm positions held and dates of employment.  They
both indicated that no further evaluation was possible because
"Mr. Jones . . . did not work on site with us."  (Pl. Exs. I, J).
The substantive fields left blank included "Professional
Preparation and Competency"; "Response to Supervision";
"Dependability and Responsibility"; and "General Classroom
Management and Organization."  (Pl. Exh. C).  There was one
difference between the forms:  Ventura checked "yes" in response
to whether she would hire Jones as a substitute teacher while
Cruz did not respond to the question.  (Pl. Aff. Exs. I, J).

     Ultimately, the School District denied employment to
Jones, sending a rejection letter that stated "we require that a
candidate furnish a minimum of two references from prior

-4-

employers.  You have not met that requirement:  the only material
which we have received is a response from GoodTemps stating that
they cannot and will not evaluate your work."  (Pl. Aff. Exh. L).
Although the rejection letter is not dated, both plaintiff and
the School District agree it was mailed and received in January
2007.  (Pl. Dep. 389-393).

## B.   **Prior Proceedings**

After receiving the rejection letter from the School
District, Jones filed a charge of discrimination with the Equal
Employment Opportunity Commission (the "EEOC") in January 2007,
alleging that both GoodTemps and the School District
discriminated against him based upon his race.  (Pl. Aff. Exh.
M).  The EEOC concluded its independent investigation and advised
Jones that the "allegations of race discrimination . . . [are]
without merit."  (Pl. Aff. Exh. N).  Accordingly, the EEOC
issued a right to sue letter with respect to both entities on
June 18, 2007.

On February 5, 2008, Jones filed a complaint in this
Court against the School District and GoodTemps, alleging
discrimination under Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000(e) et seq., as well as 42 U.S.C. §§ 1981 and
1983, the Fifth and Thirteenth Amendments, and New York State
law.  These motions followed.

## DISCUSSION

Although they are based to some extent on overlapping
legal theories, plaintiff asserts essentially four claims:  (1)

-5-

discrimination in employment because of his race; (2) violation
of his procedural due process rights; (3) state tort law; and (4)
violation of the Thirteenth Amendment to the U.S. Constitution.
I address each claim in turn, after first discussing the
standards applicable to motions for summary judgment.

## A.    Summary Judgment Standard

The standard governing motions of summary judgment are
well-settled.  A court may only grant summary judgment where
there are no issues as to material fact and the opposing party is
therefore entitled to judgment as a matter of law.  See Fed. R.
Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v Zenith Radio
Corp., 475 U.S. 574, 585-87 (1996).  Summary judgment is denied
if the evidence is such that a reasonable juror could return a
verdict in favor of the non-moving party.

The longstanding guidelines for evaluating a motion for
summary judgment also require that the court accept all
allegations in the complaint as true and draw reasonable
inferences in plaintiff's favor.  See Brown v. Coach Stores,
Inc., 163 F.3d 706, 709 (2d Cir. 1998).  A motion for summary
judgment "may only be granted when it appears beyond any doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief."  Conley v. Gibson, 355
U.S. 41, 45-46 (1957).

In deciding a motion for summary judgment, the role of
the Court is not to ask whether "the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return

-6-

a verdict for the plaintiff on the evidence presented." <u>Anderson</u>
<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Because the
court's role is limited in this respect, it may not make factual
findings, determine credibility of witnesses, or weigh evidence.
See <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir.
2005); <u>Hayes v. N.Y. City Dep't of Corr.</u>, 84 F.3d 614, 619 (2d
Cir. 1996); <u>United States v. Rem</u>, 38 F.3d 634, 644 (2d Cir.
1994).

The standard for reading allegations brought by a <u>pro</u>
<u>se</u> plaintiff are similarly well-settled.  "[I]n general, a <u>pro</u> <u>se</u>
plaintiff's allegations are held to a less stringent standard
than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404
U.S. 519, 520 (1972).  This plaintiff is also a practicing
attorney, however, and has represented clients in discrimination
cases before the EEOC.  (Pl. Dep. 411-12).  Thus, he is not the
typical <u>pro</u> <u>se</u> litigant.  <u>See</u> <u>Presnick v. Bysiewicz</u>, 297 F. Supp.
2d 431 (D. Conn. 2003); <u>Bertucci v. Brown</u>, 663 F. Supp. 447
(E.D.N.Y. 1987) (holding that <u>pro</u> <u>se</u> plaintiff who is a former
attorney is held to a higher standard).  Still, the court will
grant plaintiff a broad reading of his pleadings.

**B.   Race Discrimination Claims**

Jones's discrimination claims are based upon Title VII,
§ 1981, and § 1983 (i.e., equal protection and conspiracy).  All
of these claims are analyzed under the same legal framework; I
will first evaluate the Title VII claim for timeliness, then I
will consider the employment claims on the merits.

1. **Title VII**

To be timely, actions for violations of Title VII must
be filed within ninety days after receipt of a right to sue
letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); accord
Baldwin Co. Welcome Ctr. v. Brown, 466 U.S. 147, 149 (1984).  As
the Second Circuit has held, "in the absence of a recognized
equitable consideration, the court cannot extend the limitations
period by even one day."  Johnson v. Al Tech Specialties Steel
Corp., 731 F.2d 143, 146 (2d Cir. 1984) (dismissing action filed
ninety-seven days after receipt); see Zerilli-Edelglass v. N.Y.
City Transit Auth., 333 F.3d 74, 78 (2d Cir. 2003) (affirming
dismissal of complaint received by pro se office ninety-two days
after receipt of right to sue notice); Moscowitz v. Brown, 850 F.
Supp. 1185, 1191 (S.D.N.Y. 1994) (dismissing pro se action filed
ninety-one days after receipt of notice).

Jones's Title VII claim against the School District is
untimely.  The EEOC issued Jones a right to sue letter on June
26, 2007.  (Pl. Dep. 161; Pl. Aff. Exh. N).  Absent contrary
evidence, a right-to-sue letter is deemed received three days
after it is mailed.  See Sherlock v. Montefiore Med. Ctr., 84
F.3d 522, 525 (2d Cir. 1996) (citing Baldwin County Welcome Ctr.
v. Brown, 466 U.S. 147 (1984).  Jones therefore is deemed to have
received it on June 29, 2007 (a Friday) and he had ninety days,
until September 27, 2007 (a Thursday), to commence his action.
He did not do so until February 5, 2008, well after the time
frame set by the issuance of the right to sue letter.

-8-

Accordingly, Jones's Title VII claims are time-barred and are dismissed as a matter of law.  Moreover, for the reasons explained below, even assuming they were timely, these claims would also fail on the merits.

### 2.  The Merits

Employment discrimination claims brought under 42 U.S.C. §§ 1981 and 1983 are analyzed in the same way as claims brought under Title VII.  In the absence of any direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074 (providing that the burden-shifting scheme developed under Title VII "should apply to claims of racial discrimination under § 1981"); Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 146 (2d Cir. 1999).  Jones has not presented any direct evidence that GoodTemps or the School District was motivated by discriminatory intent.  Accordingly, the court will evaluate the case under the McDonnell Douglas standards.

### i.  Applicable Law

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," i.e., that there was discriminatory intent.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000); Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 119 (2d Cir. 1997).

A plaintiff in an employment discrimination case relies
on the three-step <u>McDonnell Douglas</u> test.  First, he must
establish a prima facie case of unlawful discrimination by
showing that (1) he is a member of a protected class (2) who
applied for a vacant position (3) for which he was qualified (4)
and was rejected under circumstances giving rise to an inference
of discrimination.  <u>See</u> <u>McDonnell Douglas Corp.</u>,411 U.S. at 792;
<u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 565 (2d Cir. 2000).

Second, if the plaintiff establishes a prima facie
case, a rebuttable presumption of discrimination arises and the
burden shifts to the employer-defendant to articulate a
legitimate, non-discriminatory reason for the employment
decision.  <u>See</u> <u>Reeves</u>, 530 U.S. at 142; <u>Cruz</u>, 202 F.3d at 567.

Finally, if the employer articulates a
nondiscriminatory reason for its actions, the presumption of
discrimination is rebutted and it "simply drops out of the
picture." <u>St Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11
(1993).  The burden then shifts back to the plaintiff to show,
without the benefit of any presumptions, that more likely than
not the employer's decision was motivated, at least in part, by a
discriminatory reason.  <u>See</u> <u>Fields</u>, 115 F.3d at 119.

To meet this burden, a plaintiff may rely on evidence
presented to establish his prima facie case as well as additional
evidence.  Such additional evidence may include direct or
circumstantial evidence of discrimination.  <u>See</u> <u>Desert Palace,</u>
<u>Inc. v. Costa</u>, 539 U.S. 90, 99-101 (2003); <u>Harris v. City of New</u>

-10-

York, No. 03 Civ. 6167 (DLC), 2004 WL 2943101, at *2 (S.D.N.Y.
Dec. 21, 2004).  It is not sufficient, however, for a plaintiff
merely to show that he satisfies "McDonnell Douglas's minimal
requirements of a prima facie case" and to put forward "evidence
from which a factfinder could find that the employer's
explanation . . . was false."  James v. N.Y. Racing Ass'n, 233
F.3d 149, 153 (2d Cir. 2000).  Instead, the key is whether
sufficient evidence exists in the record from which a reasonable
trier of fact could find in favor of plaintiff on the ultimate
issue of whether the record contains sufficient evidence to
support an inference of discrimination.  See id.

As the Second Circuit observed in James, "the way to
tell whether a plaintiff's case is sufficient to sustain a
verdict is to analyze the particular evidence to determine
whether it reasonably supports an inference of the facts
plaintiff must prove -- particularly discrimination."  Id. at
157; see Lapsley v. Columbia Univ., 999 F. Supp. 506, 513-16
(S.D.N.Y. 1998) (advocating elimination of the McDonnell Douglas
test in favor of simplified approach focusing on ultimate issue
of whether sufficient evidence exists to permit jury to find
discrimination); see also Norton v. Sam's Club, 145 F.3d 114, 118
(2d Cir. 1998) ("The thick accretion of cases interpreting this
burden-shifting framework should not obscure the simple principle
that lies at the core of anti-discrimination cases.  In these, as
in most other cases, the plaintiff has the ultimate burden of
persuasion.").

-11-

### ii. **Application**

I assume for purposes of this motion that Jones has
made out a prima facie case of race discrimination, as required
under McDonnell Douglas. Both GoodTemps and the School District
have met their burden of articulating nondiscriminatory reasons
for their employment decisions: the School District asserts that
Jones did not meet the hiring requirements while GoodTemps
maintains that its longstanding policy is not to issue subjective
references for its candidates.

Accordingly, I proceed directly to the ultimate
question of whether Jones has presented sufficient evidence from
which a reasonable jury could find that he was discriminated
against because of his race. I do so by evaluating Jones's
evidence, GoodTemps's evidence, the School District's evidence,
and finally the record as a whole, keeping in mind the
elusiveness of proof of discrimination and the principle that the
jury is "entitled to view the evidence as a whole." Stern v.
Trs. Of Columbia Univ., 131 F.3d 305, 314 (2d Cir. 1997).

### a. **Jones's Evidence**

#### 1. **Against GoodTemps**

In support of his contention that GoodTemps
discriminated against him because of his race, Jones presents the
following evidence:

First, when Jones called GoodTemps for a reference, his
supervisor, Michelle Gonzalez, gave no indication that there was

-12-

a policy against providing substantive evaluations.   (Pl. Dep. 109).

Second, Jones testified that he relied on GoodTemps's promise to send a reference, which was left mostly blank.   The form indicated Jones's dates of employment but not the evaluative fields ("Professional Preparation and Competency"; "Response to Supervision"; "Dependability and Responsibility").   (Pl. Aff. Exs. I, J).

Third, Jones submits that GoodTemps thwarted his application with the School District when Christina Cruz and Quinette Ventura each submitted different forms.   (Pl. Dep. 115-16, 123-25, 305-09).   While Ventura indicated that she would hire Jones, Cruz did not answer the question.   (Pl. Aff. Exs. I, J).

## 2.   **Against the School District**

In support of his claim against the School District, Jones proffers the following evidence:

Jones testified that the School District hired twelve similarly situated white employees for the 2006-07 school year. (Pl. Aff. Exh. S).   He bases this assertion on the report from the EEOC and the School District's employment records.   (Id.).[1]

Jones asserts that the School District added elements to its stated applications requirements.   The School District never informed him that professional references should evaluate a candidate's classroom experience.   (Pl. Dep. 114, 399).

---

[1]   Jones does not assert that these twelve employees failed to provide two references.

Moreover, the reference form provided by the School District did not indicate that every field had to be completed.  (Pl. Aff. Exh. D).

### b.   Defendants' Evidence

#### 1.   GoodTemps

In support of its motion for summary judgment, GoodTemps provides the following evidence:

First, GoodTemps presents its neutral reference policy, which took effect roughly six months before Jones requested a reference.  (Cruz Aff. ¶ 6; Lee Aff. ¶ 21).

Second, Christina Cruz testified that she informed Gonzalez of GoodTemps's neutral reference policy, advising Gonzalez to fill out the School District's form with only objective information.  (Cruz Aff. ¶¶ 5-7).

Third, GoodTemps posits that, as a job placement agency, the company does not have the type of information necessary to fill out substantive evaluations.  (Cruz Aff. ¶¶ 21-22).

Fourth, ten days after Jones made his request, Jones acknowledges that Gonzalez informed Jones of GoodTemps's reference policy, and noted that the form could not be completed.  (Pl. Dep. 115-116).

#### 2.   The School District

The School District offers the following evidence in support of its non-discriminatory reason for not hiring Jones:

First, the School District maintains that Jones failed

-14-

to provide the documents necessary to evaluate his application. Assistant Superintendent of Schools for Personnel Margaret Pecunia wrote to Jones, stating: "[r]eferences from prior employers are a critical resource for us to evaluate a prospective employee." (School District Aff. Exh. P). The School District routinely requests its applicants to submit two reference forms. (Id.).

Second, the School District maintains that had it received a reference from Jones's legal client, it would have been irrelevant because such a letter could not speak to Jones's abilities "as an employee." (Id.; Pecunia Aff. ¶ 8).

Third, the School District states that Jones has provided no evidence to show that similarly situated non-African-American applicants were treated more favorably. (School District Aff. Exh. R). A representative from the School District testified that the School District observes a strictly race-neutral reference policy and boasts racial diversity among its employees. (Pecunia Aff. ¶ 5).

Finally, in Pecunia's letter to Jones, she informed him that the School District denied Jones's application because the only basis on which to judge Jones's teaching skills were the forms from GoodTemps, which merely indicated his dates of employment. (School District Aff. Exh. P).

### c.   **Record as a Whole**

Considering the record as a whole, and resolving all conflicts in evidence and drawing all reasonable inferences in

-15-

Jones's favor, I conclude that no reasonable jury could find that Jones was discriminated against on the basis of race.  Jones has not presented sufficient evidence from which a reasonable jury could find that he was discriminated against by either GoodTemps or the School District.  With respect to GoodTemps's proffered reason that it was following the terms of its neutral reference policy, Jones has not presented any evidence showing that GoodTemps acted with discriminatory intent.  With respect to the School District's decision not to hire Jones, Jones has not demonstrated that he completed his application with sufficient information for the School District to evaluate his credentials.

Jones has not presented any evidence of racial discrimination.  For example, he has presented no relevant statistics to show that either GoodTemps or the School District discriminated against African Americans.  He has offered no proof of any discriminatory comments made by employees of GoodTemps or the School District.  He points to no examples of non-African-American temporary employees of GoodTemps who were provided with a substantive reference letter, or non-African-American applicants to the School District who were hired without providing two references.  Jones merely relies on conclusory assertions from which no reasonable juror could infer discrimination.  Accordingly, Jones's claims of discrimination do not withstand the summary judgment motions.[2]

[2]     Jones also frames his § 1983 action as a "conspiracy," alleging that GoodTemps and the School District conspired to deny him employment on the basis of his race.  Jones has offered no

**E.   Procedural Due Process Claim**

Next, Jones alleges that his procedural due process and Fifth Amendment rights were violated because GoodTemps refused to write a recommendation for him and the School District refused to hire him.  I will first analyze his claim under § 1983 and then proceed to the Fifth Amendment claim.

**1.   Section 1983 Claim**

**i.   Applicable Law**

To sustain a claim under § 1983 based on an alleged violation of due process, Jones must show that (1) he possesses a liberty or property interest protected by the Constitution or a federal statute and (2) he was deprived of that liberty or property interest without due process.  See Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (citing Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995)).

**ii.  Application**

The first issue is whether Jones's complaint articulates a federally protected property or liberty interest.  To establish a property interest in prospective employment, Jones must demonstrate "more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1974).  Without showing that

---

evidence of communication between the School District and GoodTemps, and thus cannot sustain a conspiracy claim.  See Little v. City of New York, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007).

-17-

he complied with the School District's application requirements, Jones has not demonstrated that he was entitled to the employment he sought.

Similarly, Jones has not shown that a liberty interest was violated when GoodTemps did not fill out the evaluation. Prospective employment does not confer a liberty interest because Jones is not entitled to this employment with the School District; indeed, Jones is not entitled to employment with any particular employer. See Burka v. N.Y. City Transit Auth., 680 F. Supp. 590 (S.D.N.Y. 1988) (holding that an interest in employment does not rise to the level of a protected interest unless the individual can assert entitlement to it); see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir. 1996) (noting that even discharge does not deprive an employee of liberty; special aggravating circumstances are necessary to implicate a liberty interest).

Because Jones has not established a property or liberty interest, the second element, whether plaintiff was deprived of such an interest without due process, need not be addressed.

## 2.    **Fifth Amendment Claim**

Jones also contends that he was denied employment in violation of his Fifth Amendment right.  To state a claim under the Fifth Amendment, a plaintiff is required to allege facts showing that state action deprived him of a protected property interest.  See Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984). Jones has not asserted a cognizable property interest in the

-18-

prospective employment, as discussed above; thus, his Fifth
Amendment claim is dismissed.

## C.   State Law Claims

Jones brings claims under state law, alleging that
GoodTemps tortiously interfered with his prospective and actual
contractual relationship with the School District.  He further
contends that he was harmed by the School District's intentional
and negligent misrepresentation of fact.

### 1.   The School District

#### i.   Applicable Law

In general, no action may be maintained against a
school district unless written notice of claim is served within
three months of the date on which the claim accrued.  See New
York Education Law § 3813(1); accord C.S.A. Contr. Corp. v. N.Y.
City Sch. Constr. Auth., 5 N.Y.3d 189, 192 (2005).  After such
written notice is given, an action against a school district must
be commenced within one year after the cause of action arose.
See New York Education Law § 3813(2-b).  Courts may grant a
plaintiff's request for leave to file a late notice of claim as
long as the request is made within the one-year statute of
limitations for filing suit.  See Amorosi v. S. Colonie Indep.
Cent. Sch. Dist., 9 N.Y.3d 367 (2007).

The written notice of claim requirement in § 3813(1) is
obviated when the plaintiff demonstrates that the School District
had actual knowledge of the claim and the plaintiff has filed the
action within the one-year statute of limitations.  See Donlon v.

-19-

Bd. of Educ. of Greece Cent. Sch. Dist., No. 06 Civ 6027T, 2007
WL 108470, at *5 (W.D.N.Y. Jan. 12, 2007).

### ii. **Application**

The state law claims against the School District are
time-barred, as Jones did not comport with the requirements of §
3813(1). Jones's cause of action arose in January 2007 when he
was denied employment by the School District, and he was required
to serve notice by April 2007, and to file suit by January 2008.
Jones did not commence this action until February 5, 2008 and did
not file a motion to serve a late notice of claim until August
11, 2009.

Jones suggests that defendants had actual knowledge of
this claim by virtue of the EEOC proceedings. Because Jones
commenced this action over one year after his claim accrued, the
actual knowledge exception is inapplicable. See Donlon, 2007 WL
108470 at *5 (holding that courts are not permitted to grant
extensions for the notice of claim requirement beyond the one-
year statute of limitations). Accordingly, Jones's state claims
against the School District are dismissed.

### 2. **GoodTemps**

Jones alleges that GoodTemps violated state law by
tortiously interfering with his prospective and actual
contractual relationship with the School District when it failed
to fill out the substantive portions of the evaluation form.

-20-

### i.   **Applicable Law**

A claim for tortious interference with contract requires proof of four elements:   (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's "intentional inducement" of the third party to breach the contract, and (4) damages.   <u>Kronos v. AVX Corp.</u>, 81 N.Y.2d 90, 94 (1993).

Further, to sustain a claim for tortious interference with a prospective contract with a third party, a plaintiff must demonstrate that (1) but for the actions of the defendant, the contract would have been formed and (2) in preventing the contract from being executed, the defendant intended to "damage the plaintiff" or engaged in "dishonest, unfair or otherwise improper" conduct.   <u>Bankers Trust Co. v. Bernstein</u>, 169 A.D.2d 400, 401  (N.Y. App. Div. 1st Dep't 1991).

### ii.   **Application**

First, Jones has not established his claim for tortious interference with contract because it is undisputed that he did not have a contractual relationship with the School District. Indeed, Jones testified that he did not have an employment contract with the School District.  (Pl. Dep. 379, 620).  Because Jones does not allege a contractual relationship with the School District, his tortious interference with contract claim fails as a matter of law.  <u>See</u> <u>Kronos</u>, 82 N.Y.2d at 90.

Second, Jones's claim that GoodTemps interfered with a prospective contractual relationship also fails as a matter of law. He has not established that he would have been hired if GoodTemps had completed the evaluation. To the contrary, even if GoodTemps had provided the reference, his application still would have been incomplete. The School District required job candidates to provide two professional references. (Pl. Aff. Exs. D, L). Jones testified that he relied on a reference from GoodTemps and a former legal client, Roy Gray. (Pl. Aff. Exh. H). The School District never received Gray's reference, and informed Jones in any event that Gray's evaluation would have been invalid because Gray could not speak to Jones's abilities as an employee or teacher. (Pl. Aff. Exh. L). Additionally, Jones has not proffered any evidence showing that GoodTemps acted improperly in refusing to submit a substantive reference.

## G.  **Thirteenth Amendment Claim**

To sustain a claim under the Thirteenth Amendment, a plaintiff must "demonstrate he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." Ford v. Nassau County Executive, 41 F. Supp. 2d 392, 400-01 (E.D.N.Y. 1999). Here, Jones has presented no evidence that he was forced into labor and the Thirteenth Amendment claim is dismissed.

-22-

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted and the complaint is dismissed, with prejudice.  The Clerk of the Court shall enter judgment accordingly, with costs.

SO ORDERED.

Dated:    New York, New York
          March 19, 2010

DENNY CHIN
United States District Judge